**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
BRIAN M. JACKSON, individually and on
behalf of a class,

     Plaintiff,        **DECISION AND ORDER**
              14-cv-2485 (ADS)(AKT)

    -against-

CARIBBEAN CRUISE LINE, INC.,
ADSOURCE MARKETING LTD., and Does 1-
10,

     Defendants.
--------------------------------------------------------X

<u>**APPEARANCES:**</u>

**Kleinman, LLC**
*Attorneys for the Plaintiff*
626 RXR Plaza
Uniondale, NY 11556-0626
  By: Abraham Kleinman, Esq., Of Counsel

**Edelman, Combs, Latturner & Goodwin, LLC**
*Attorneys for the Plaintiff*
20 South Clarke Street
Suite 1500
Chicago, IL 60603
  By: Cathleen M. Combs, Esq.
   Daniel A. Edelman, Esq.
   Tiffany N. Hardy, Esq., Of Counsel

**Greenspoon Marder, P.A.**
*Attorneys for the Defendant Caribbean Cruise Line, Inc.*
100 West Cypress Creek Road
Suite 700
Fort Lauderdale, FL 33309
  By: Jeffrey Backman, Esq.
   Richard W. Epstein, Esq., Of Counsel

**Morgan Melhuish Abrutyn**
*Attorneys for the Defendant Caribbean Cruise Line, Inc.*
651 West Mt Pleasant Avenue
Suite 200
Livingston, NJ 07039
       By: Shaji M. Eapen, Esq., Of Counsel

<u>**NO APPEARANCES:**</u>

*Adsource Marketing Ltd.*
*Does 1-10*

**SPATT, District Judge**.

On April 18, 2014, the Plaintiff Brian M. Jackson (the "Plaintiff"), individually and on behalf of a putative class, commenced this action against the Defendant Caribbean Cruise Line, Inc. ("CCL") and several Doe Defendants. The Plaintiff asserted a violation of the Telephone Consumer Protection Act, 42 U.S.C. § 227 *et seq.* ("TCPA") and sought actual and statutory damages, injunctive relief, and costs.

That same day, to avoid having the class claims mooted by a Rule 68 Offer of Judgment or other tender, the Plaintiff filed a motion to certify a class defined as (a) all persons (b) who, on or after April 18, 2010 (c) were sent text message calls by or on behalf of CCL.

On April 25, 2014, the Court denied the motion for class certification without prejudice to re-file upon completion of class discovery.

On May 27, 2014, CCL moved pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) to dismiss the complaint as against it for failure to state a claim upon which relief can be granted.

On June 17, 2014, in lieu of responding to Defendant's motion to dismiss, the Plaintiff filed an amended complaint.

That same day, the Plaintiff filed an amended motion to certify a class, again defined as (a) all persons (b) who, on or after April 18, 2010 (c) were sent text message calls by or on behalf of CCL.

On June 20, 2014, the Court denied the Plaintiff's amended motion for class certification without prejudice to re-file upon completion of class discovery.

On July 8, 2014, CCL served the Plaintiff with a Rule 68 Offer of Judgment.  The Plaintiff did not respond to that offer.

On August 1, 2014, CCL moved pursuant to Fed. R. Civ. P. 12(b)(1) and 12(h)(3) to dismiss the complaint against it for lack of subject matter jurisdiction in light of the Rule 68 Offer of Judgment to the Plaintiff.

On September 18, 2014, the Plaintiff moved pursuant to Fed. R. Civ. P. 15(a) for leave to file a second amended complaint adding Adsource Marketing Ltd. ("Adsource") as a defendant.

On September 19, 2014, the Court granted as unopposed the Plaintiff's motion for leave to file a second amended complaint.

On October 2, 2014, the Plaintiff filed the second amended complaint.

On December 5, 2014, CCL moved to withdraw the motion to dismiss the original complaint for lack of subject matter jurisdiction.

On December 6, 2014, the Court granted CCL's motion to withdraw the motion to dismiss for lack of subject matter jurisdiction.

With respect to CCL's pending motion to dismiss the original complaint pursuant to Fed. R. Civ. P. 12(b)(6), "[w]hen a plaintiff amends its complaint while a motion to dismiss is pending, . . . the 'court then has a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion as moot to considering the merits of the motion in light of

the amended complaint.'" Sussman-Automatic Corp. v. Spa World Corp., No. 13-CV-7352 (ADS)(AKT), 2014 WL 1651953 (E.D.N.Y. Apr. 25, 2014)(quoting Roller Bearing Co. of Am., Inc. v. Am. Software, Inc., 570 F. Supp. 2d 376, 384 (D. Conn. 2008)(citation and internal quotation marks and alterations omitted).

For the reasons set forth, CCL's motion to dismiss the original complaint against it pursuant to Fed. R. Civ. P. 12(b)(6) is treated as directed at the second amended complaint and granted.  The second amended complaint is dismissed as against CCL without prejudice to replead certain allegations as set forth later.  Finally, *sua sponte*, the Court declines to certify certain portions of this Decision and Order to CLL for an interlocutory appeal under 28 U.S.C. § 1292(b).

## I.  BACKGROUND

Unless stated otherwise, the following facts are drawn from the second amended complaint and construed in a light most favorable to the non-moving party, the Plaintiff.

A.  The Parties

At the time the complaint was filed, the Plaintiff, an individual, was a resident of this district.

CCL is a Florida Corporation with its principal place of business located at 5100 North State Road 7, Fort Lauderdale, Florida 33319.

Adsource is a Canadian corporation with its principal place of business located 82 Pleasant Heights RR2, Pictou, Nova Scotia.  Adsource conducts business throughout the United States, including in this District.

The Defendants John Does 1-10 are other natural or artificial persons, unknown to the Plaintiff, allegedly involved in the sending of the text messages described below.

4

B.  Factual Allegations

On March 25, 2014, the Plaintiff received an unsolicited text message on his cellular telephone from the email address, nixcyzqienkm@mytextalerts.net.  The text message, a screenshot of which is as attached as Exhibit A to the second amended complaint, read: "Enjoy your Two Cruise Tickets! Call to claim 954 507 7628."

According to the Plaintiff, Adsource sent the text message to the Plaintiff's cellular phone on behalf of CCL.  The Plaintiff had no prior relationship with CCL or Adsource.

Further, on information and belief, the message was delivered on a mass basis using an automated telephone dialing system.  The Plaintiff also alleges that the message was not personalized and was made for telemarketing purposes to promote CCL's cruise line.  On information and belief, the Plaintiff alleges that his phone number and that of other potential class members are stored in a database that can be used to generate future calls using a random number generator or sequential number generator to dial such numbers.

C.  Procedural History

As stated above, on October 2, 2014, the Plaintiff filed the second amended complaint, asserting one claim against CCL and Adsource for a violation of 47 U.S.C. § 227(b)(3) of the TCPA.  In particular, the Plaintiff maintains that he and other potential class members suffered damages as a result of their receipt of the unsolicited text messages in that they were required to pay for such receipt, either on a per message basis or because the receipt counted against the number of minutes or messages they pay for.  The Plaintiff further asserts that their statutory right to privacy was violated.

Adsource has not answered or otherwise responded to the second amended complaint.

Again, the Court treats CCL's motion to dismiss the original complaint against it pursuant to Fed. R. Civ. P. 12(b)(6) as directed at the second amended complaint.

The Court also notes that the Plaintiff has not filed a memorandum of law in opposition to CCL's motion to dismiss, instead relying on the filing of an amended complaint and then a second amended complaint.

## II. DISCUSSION

A.  The Legal Standard Governing a Rule 12(b)(6) Motion

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 67, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  On a motion to dismiss, the Court "take[s] the factual allegations of the complaint to be true and draw[s] all reasonable inferences in the plaintiff's favor." Warren v. Colvin, 744 F.3d 841, 843 (2d Cir. 2014).  "In ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 113 (2d Cir. 2010)(internal quotation marks and citations omitted).

B.  The Sufficiency of the Plaintiff's TCPA Claim Against CCL

The TCPA was passed primarily because "[m]any consumers [were] outraged over the proliferation of intrusive, nuisance [telemarketing] calls to their homes." Mims v. Arrow Fin. Servs., LLC, ⸻ U.S. ⸻, ⸻, 132 S. Ct. 740, 745, 181 L. Ed. 2d 881 (2012)(second alteration added); see Ziegler v. Allied Commercial Roofing, Inc., No. 13-CV-02638 (FB)(JMA), 2014 WL 4437316, at *2 (E.D.N.Y. Sept. 9, 2014)(discussing the TCPA).

Here, the Plaintiff raises a claim under 47 U.S.C. § 227(b)(1)(A)(iii), (Second Amended

Compl., at ¶ 30-31.), which makes it unlawful for any person:

> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service . . . or any service for which the called party is charged for the call. . . .

"The TCPA is essentially a strict liability statute" that "does not require any intent for liability

except when awarding treble damages." Echevvaria v. Diversified Consultants, Inc., No. 13 CIV.

4980 (LAK)(AJP), 2014 WL 929275, at *4 (S.D.N.Y. Feb. 28, 2014)(citations and quotation

marks omitted); see also e.g., Branham v. ISI Alarms, Inc., No. 12–CV–1012 (ARR)(MDG),

2013 WL 4710588, at *8 (E.D.N.Y. Aug. 30, 2013); Alea London Ltd. v. Am. Home Servs.,

Inc., 638 F.3d 768, 776 (11th Cir. 2011)("The TCPA is essentially a strict liability statute which

imposes liability for erroneous unsolicited faxes.").

By its terms, 47 U.S.C. § 227(b)(1)(A)(iii), assigns civil liability only to the party who

"makes" a call.  Indeed, the language of that provision notably differs from 47 U.S.C. §

227(c)(5), which concerns calls to persons on the National Do–Not–Call Registry and imposes

liability for multiple calls made "by or on behalf of" a person.  Emphasizing the contrasting

language between these two sections, other district courts have held that there is no "on behalf

of" liability for defendants under section 227(b). Mais v. Gulf Coast Collection Bureau, Inc., 944

F. Supp. 2d 1226, 1242 (S.D. Fla. 2013), rev'd in part on other grounds, 768 F.3d 1110 (11th Cir.

2014); Mey v. Pinnacle Sec., LLC, No. 5:11CV47 (FPS), 2012 WL 4009718, at *1 (N.D.W. Va.

Sept. 12, 2012)("With regard to the right of action created under [subsection 227(c)(5)],

Congress specifically provided for strict 'on behalf of' liability, but in creating a right of action

for violations of subsection (b), it notably made no mention of such strict liability."); Thomas v.

Taco Bell Corp., 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012)("Ms. Thomas' reading of the section under which she sues is not persuasive because Congress inserted this phrase into Section 227(c)(5), but left it out of Section 227(b)(1)(A)(iii), each of which creates a different, unrelated claim under the TCPA.").  "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Russello v. United States, 464 U.S. 16, 23, 104 S. Ct. 296, 78 L. Ed. 2d 17 (1983)(quoting United States v. Wong Kim Bo, 472 F.2d 720, 722 (5th Cir. 1972)); see also United States v. Gonzales, 520 U.S. 1, 5, 117 S. Ct. 1032, 137 L. Ed. 2d 132 (1997).

Here, the Court finds that the Plaintiff has not plausibly alleged that CCL, as opposed to Adsource, "made" the relevant text messages.  Therefore, CCL may not be held strictly liable under 47 U.S.C. § 227(b)(1)(A)(iii).

A number of courts have considered whether a defendant may nonetheless be held vicariously liable under the TCPA in accordance with traditional tort principles.  The overwhelming majority have answered that question in the affirmative. McCabe v. Caribbean Cruise Line, Inc., No. 13-CV-6131 (JG), 2014 WL 3014874, at *3 (E.D.N.Y. July 3, 2014); Bank v. Caribbean Cruise Line, Inc., No. 12–CV–584 (JG)(VS), at 22–23, ECF No. 49 (E.D.N.Y. August 26, 2013), adopted Sept. 30, 2013; Gomez v. Campbell-Ewald Co., 768 F.3d 871, 877 (9th Cir. 2014)("a defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller."); Thomas v. Taco Bell Corp., 582 F. App'x 678, 679 (9th Cir. 2014)("the district judge properly concluded vicarious liability can provide the basis for liability for a TCPA violation."); Hartley-Culp v. Green Tree Servicing, LLC, No. 3:14CV200

8

(JMM), 2014 WL 5088230, at *2 (M.D. Pa. Oct. 10, 2014)("we hold that the TCPA can impose liability directly or vicariously upon any person or entity on whose behalf a third party places a call in violation of § 227(b)(1)(A)"); Bridgeview Health Care Ctr. Ltd. v. Clark, 09 C 5601 (MV), 2013 WL 1154206, at *4 (N.D. Ill. Mar. 19, 2013)("Thus, the TCPA creates a form of vicarious liability making an entity liable when a third party sends unsolicited communications on its behalf in violation of the Act.")(citing Glen Ellyn Pharmacy v. Promius Pharma, LLC, No. 09-C-2116 (BMM), 2009 WL 2973046, at *3 (N.D. Ill. Sept.11, 2009)); Account Outsourcing, LLC v. Verizon Wireless, 329 F. Supp. 2d 789, 805-06 (M.D. La. 2004)(same); but see Mais, 2013 WL 1899616, at *13 (holding that TCPA does not permit vicarious liability).

These courts have relied on multiple and varying rationales to support this determination. Some courts have looked to the purpose of the TCPA and found that to hold otherwise, that is, to decline to recognize potential vicarious liability under the statute, would undermine its deterrent effect. See Bank, No. 12–CV–584, at 18-19, ECF No. 49 ("If a company were to be allowed to avoid TCPA liability by merely hiring a different company to make its unlawful calls, the statute would lose its deterrent effect.  Vicarious liability prevents this liability maneuvering."); Birchmeier v. Caribbean Cruise Line, Inc., No. 12 C 4069 (MFK), 2012 WL 7062748, at *1 (N.D. Ill. Dec. 31, 2012)("To offer an example, suppose that A, a well-heeled entity that wants to sell a product or service, stands next to B, an impecunious defendant, and directs B to place unsolicited, prerecorded calls to consumers on their cell phones. Defendants' position, it appears, is that only B, the impecunious dialer, would be liable and that A would get off scot-free.  A Congressional enactment that permitted this would be absurd indeed.  Fortunately that is not the law under the TCPA."); Smith v. State Farm Mut. Auto. Ins. Co., 30 F. Supp. 3d 765, 774 (N.D. Ill. 2014)("Congress intended for the TCPA to protect individuals from the annoyance and cost

of receiving certain types of telemarketing calls without their prior consent.  As the FCC and the telemarketing industry recognized in Dish Network, sellers are in the best position to monitor and police third-party telemarketers' compliance with the TCPA.  Allowing sellers to avoid potential TCPA liability by outsourcing their telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions, particularly when the telemarketers are judgment proof, unidentifiable, or located outside the United States.  Interpreting section 227(b) as not allowing vicarious liability, therefore, undermines the purpose of the TCPA.")(internal citations omitted).

Other courts have relied heavily on a declaratory ruling issued by the Federal Communications Commission ("FCC"), In re Joint Petition filed by Dish Network, LLC, 28 F.C.C.R. 6574, 6582 ¶ 24 (2013)("Dish Network"), after a referral of a TCPA case from the Sixth Circuit Court of Appeals to the FCC.  In that ruling, the FCC stated that the "TCPA contemplates that a seller may be vicariously liable under agency principles for violations of section 227(b) notwithstanding the absence of 'on behalf of' liability available for do-not-call violations under section 227(c)." Id. at 6590 n. 124.  The FCC further explained that a seller may face vicarious liability "under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." Id. at 6584 ¶ 28.

The Courts have diverged on the appropriate deference that should be accorded to Dish Network and prior FCC rulings in this area under Chevron USA Inc. v. NRDC, Inc., 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984). Compare Gomez, 768 F.3d at 878 ("Because Congress has not spoken directly to this issue and because the FCC's interpretation [of the TCPA in Dish Network] was included in a fully adjudicated declaratory ruling, the interpretation must be afforded Chevron deference.") with Mais, 30 F. Supp. 2d. at 1243 (holding that a prior FCC

ruling regarding vicarious liability under section 227(b) was not entitled to <u>Chevron</u> deference because it contradicted the TCPA's plain language) <u>and</u> <u>Toney v. Quality Res., Inc.</u>, No. 13 CV 42 (AJSE), 2014 WL 6757978, at *12 (N.D. Ill. Dec. 1, 2014)(referring to <u>Dish Network</u>, "[t]he FCC's 'guidance' on this subject, however, is not binding on the court, is not entitled to deference, and 'has force only to the extent the [FCC] can persuade [the court] to the same conclusion)(citation omitted) <u>and</u> <u>Bridgeview Health Care Ctr. Ltd.</u>, 2014 WL 7717584, at *5 n. 2 (same)).

 <u>Toney</u> and <u>Bridgeview</u>, and CCL here, quote a decision of the United States Court of Appeals for the District of Columbia Circuit which had occasion, pursuant to 47 U.S.C. § 402(a) and 28 U.S.C. §§ 2342(1) and 2344, to review the <u>Dish Network</u> FCC ruling.  However, the D.C. Circuit's decision "dealt only with paragraphs 46 and 47 of the FCC Ruling, which provide 'guidance' to the courts on how common-law agency principles might apply to TCPA cases. Neither the FCC nor the D.C. Circuit stated that the FCC's determination that section 227(b) of the TCPA incorporates common-law agency principles is not entitled to deference." <u>Smith</u>, 30 F. Supp. 3d at 773; <u>see also</u> <u>Avio, Inc. v. Alfoccino, Inc.</u>, 18 F. Supp. 3d 882, 896 (E.D. Mich. 2014)(interpreting <u>Dish Network</u>); <u>Creative Montessori Learning Ctr. v. Ashford Gear, LLC</u>, No. 09 C 3963 (RWG), 2014 WL 865963, at *3 (N.D. Ill. Mar. 3, 2014)(same).

 Curiously, the two decisions in this Circuit to address this TCPA issue, <u>McCabe</u> and <u>Bank</u>, both issued by District Judge John Gleeson, did not mention <u>Dish Network</u>, although, as noted above, Judge Gleeson nevertheless reached the same conclusion as <u>Dish Network</u>, namely, that vicarious liability is possible under the TCPA.

 Here, the Court need not consider the overarching purpose of the TCPA or the

the FCC's ruling in <u>Dish Network</u>.  Rather, the Court relies on Supreme Court precedents regarding the type of statutory language necessary to displace common law principles. As the Supreme Court has recognized, "[w]hen Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules." <u>Meyer v. Holley</u>, 537 U.S. 280, 290, 123 S. Ct. 824, 154 L. Ed. 2d 753 (2003).  "In order to abrogate a common-law principle, the statute must 'speak directly' to the question addressed by the common law." <u>United States v. Texas</u>, 507 U.S. 529, 534, 113 S. Ct. 1631, 123 L. Ed. 2d 245 (1993).  Thus, "[a]bsent a clear expression of Congressional intent to apply another standard, the Court must presume that Congress intended to apply the traditional standards of vicarious liability." <u>Gomez</u> , 768 F.3d at 877.

Here, nothing in the language of section 227(b) itself indicates that common law agency principles are inapplicable.  Further, "the Court does not find that Congress's inclusion of the phrase 'on behalf of' in section 227(c)(5) but not in section 227(b) is sufficient to abrogate established common-law agency principles." <u>Smith</u>, 30 F. Supp. 3d at 774 (internal citations and quotation marks omitted); <u>see</u> <u>Mey v. Pinnacle Sec., LLC</u>, No. 5:11CV47 (FPS), 2012 WL 4009718, at *4 (N.D.W. Va. Sept. 12, 2012)(in light of <u>Meyer</u>, "because the TCPA does not explicitly foreclose vicarious liability, such a theory of liability is available under the Act.').  Indeed, "common-law vicarious liability is a different legal creature than statutorily-created 'on behalf of' liability." <u>Bank,</u> No. 12–CV–584, at 25, ECF No. 49.  "As a result, this Court believes that the omission of 'on behalf of' liability from the text of 47 U.S.C. § 227(b)(1) has no bearing on whether vicarious liability principles apply." <u>Id.</u>

As noted above, <u>Mais</u>, issued a day prior to <u>Dish Network</u>, reached a contrary conclusion. However, the Court respectfully declines to follow <u>Mais</u> "because that case conflated TCPA

statutory 'on behalf of' liability with common-law tort vicarious liability in disallowing vicarious liability under 47 U.S.C. § 227(b): '[T]he Court does not see how [vicarious liability] can apply where, as here, Congress has specifically provided for vicarious liability in one part of the statute [, 47 U.S.C. § 227(c)(5)], but not in the other.'" Bank, No. 12–CV–584, at 22–23, ECF No. 49 (quoting Mais). Accordingly, the Court rejects CCL's argument that section 227(b) does not permit vicarious liability under common-law principles.

The Court next must determine whether the Plaintiff has alleged a plausible basis for holding CCL vicariously liable for Adsource's text messages. The Court concludes that he has not.

The federal common law of agency is in accord with the Restatement. Agency is a "fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) Agency § 1.01 (2006); see also Bank , No. 12–CV–584, at 18, ECF No. 49 ("Under general principles of agency . . . to be liable for the actions of another, the 'principal' must exercise control over the conduct or activities of the 'agent.'" (citations omitted)).

As an initial matter, the Court notes that claims based on alleged violations of the TCPA need not be pled with particularity. McCabe, 2014 WL 3014874, at *4; see also Sepehry-Fard v. MB Fin. Servs., No. C 13-02784 (JSW), 2014 WL 122436, at *3 (N.D. Cal. Jan. 13, 2014).

Of relevance here, the Plaintiff pleads that "CCL is responsible for making or causing the making of the text message calls;" "CCL contracted with Adsource to make text message calls to consumers cellular telephone numbers"; and "Adsource sent the text message calls on behalf of, and at the direction of CCL." (Second Amended Compl., at ¶¶19-21.)

13

However, the existence of a contract between CCL and Adsource — even one that imposes certain constraints on Adsource — does not necessarily mean that CCL had the power to give "interim instructions" to Adsource, the hallmark of an agency relationship. See Restatement (Third) of Agency § 1.01 cmt. f(1)("[T]he power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents."); see also id. cmt. g ("Performing a duty created by contract may well benefit the other party but the performance is that of an agent only if the elements of agency are present."); see also Johnson v. Priceline.com, Inc., 711 F.3d 271, 278 (2d Cir. 2013)(quoting the Restatement); Smith, 2014 WL 3906923, at *776.

With that principle in mind, even viewing the allegations in a light most favorable to the Plaintiff and drawing all reasonable inferences in its favor, as the Court must on a motion to dismiss, the Court concludes that the Plaintiff's non-conclusory allegations with regard the agency relationship between CCL and Adsource fail to "nudge" his claims against CCL "across the line from conceivable to plausible. . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  In this regard, absent from the second amended complaint is any allegations that CCL had the power to give "interim instructions" to Adsource, or any non-conclusory suggestion of "direction" or "control" by CCL of Adsource. Accordingly, the Court grants CCL's motion to dismiss the complaint as against it pursuant to Rule 12(b)(6) for failure to adequately plead any agency relationship between CCL and Adsource.

The Court acknowledges that other courts have held that similar allegations withstand 12(b)(6) scrutiny. Compare McCabe, 2014 WL 3014874, at *4 ("While McCabe's allegation that the free cruise robocall was made pursuant to a contract to which CCL is a party is sparse, in

14

conjunction with the other allegations contained in the amended complaint it suffices to 'nudge' his claims against CCL 'across the line from conceivable to plausible')(quoting <u>Twombly</u>); <u>Hartley-Culp</u>, 2014 WL 5088230, at *3 (denying motion to dismiss for failure to plead vicarious liability where the second amended complaint alleged that "Defendant Resolve left such voice messages on Plaintiff's cellular phone, on Defendant Fannie Mae and Defendant Green Tree's behalf, at their direction, and under their control," and "Defendant Resolve left multiple (subsequent) similar voice-messages on Plaintiff's cellular phone, Defendant Fannie Mae and Defendant Green Tree's behalf [sic], at their direction, and under their control.")(bolding omitted).  However, neither <u>McCabe</u> nor <u>Hartley-Culp</u> explored in detail the allegations necessary to state an agency relationship under the federal common law interpreting the Restatement.

C.  <u>Leave to Amend</u>

Notwithstanding this ruling, the Court *sua sponte* considers whether to grant the Plaintiff leave to replead as against CCL. <u>Straker v. Metro. Transit Auth.</u>, 333 F. Supp. 2d 91, 102 (E.D.N.Y. 2004)("the Court may sua sponte grant leave to amend.").  "A district court's discretion to grant such leave 'is broad,' and depends upon 'many factors, including 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" <u>Transaero, Inc. v. Chappell</u>, No. 13-CV-5752 (JFB)(GRB), 2014 WL 1783732, at *7 (E.D.N.Y. May 6, 2014)(citing <u>Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel</u>, 145 F.3d 85, 89 (2d Cir. 1998)(quoting <u>Foman v. Davis</u>, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)).

The Federal Rules of Civil Procedure specifically provide that "[t]he court should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2)(brackets added).  Under this liberal standard, the Court exercises its discretion and concludes that it is appropriate to grant leave to amend as to CCL one last time.  In particular, the Court notes that the Plaintiff's action against Adsource will continue in any event.

Further, the only defect in the second amended complaint is the Plaintiff's failure to allege sufficient facts to support an agency relationship between CCL and Adsource.  At this point, the Court pauses to disagree with the other argument advanced by CCL, namely, that the Plaintiff has failed to plead that the text message in question was made using "an automatic telephone dialing system or an artificial or prerecorded voice" as required by the TCPA.  Of relevance here, the Plaintiff alleges that "[o]n information and belief, the call was made on a mass basis, using an automated telephone dialing system"; "[o]n information and belief, the equipment used to make the subject text message call had the capacity to store or produce telephone numbers to be called, using a random number generator or sequential number generator and dial such numbers;" "[t]he call was without any personalization"; and "[o]n information and belief, the text message calls were made as part of a mass broadcasting of text message calls"; and "[o]n information and belief, the phone number of plaintiff and the class members resides in a database that can be used to generate future calls using a random number generator or sequential number generator and dial such numbers." (Second Amended Compl., at ¶¶ 13, 14, 15, 24, 26.)

The Court finds that these allegations are sufficient under Rule 12(b)(6) for purposes of pleading "an automatic telephone dialing system or an artificial or prerecorded voice." <u>See</u> <u>McCabe</u>, 2014 WL 3014874, *4 (denying a motion to dismiss for failure to state a claim where

the plaintiff's pleading regarding the use of an automatic telephone dialing system or artificial or prerecorded voice was nearly identical to the instant allegation); Robinson v. Midland Funding, LLC, No. 10–CV–2261 (MMA), 2011 WL 1434919, at *1 (S.D. Cal. Apr. 13, 2011)(denying a motion to dismiss for failure to state a claim where plaintiff's pleading regarding the use of an automatic telephone dialing system or artificial or prerecorded voice was nearly identical to the instant allegation); Reyes v. Saxon Mortg. Servs., Inc., No. 09–CV–1366 (WMC), 2009 WL 3738177, at *4 (S.D. Cal. 2009)(same).

In sum, the Court grants the Plaintiff leave to amend the complaint one last time.  In so ruling, the Court is mindful of the fact that the Plaintiff has previously amended the complaint twice.  However, the case law, including McCabe, addressing this issue, namely, the necessary allegations to state an agency relationship in the context of a TCPA claim, is sparse at best and thus the Plaintiff may not have been on notice of the applicable pleading requirements.  The Court makes clear that leave to amend is limited to this agency relationship. Kaufman & Broad, Inc. v. Belzberg, 522 F. Supp. 35, 49 (S.D.N.Y. 1981)(limiting scope of leave to amend).

D.  Whether the Court Should Certify an Interlocutory Appeal Under 28 U.S.C. § 1292(b)

Also, to avoid needless motion practice, the Court considers *sua sponte* whether to certify an interlocutory appeal under 28 U.S.C. § 1292(b) to CCL as to that part of this Decision and Order rejecting his argument that vicarious liability may not attach under the TCPA. Cotterell v. Gilmore, No. 12-CV-3808 (ADS)(GRB), 2014 WL 6886079, at *28 (E.D.N.Y. Dec. 8, 2014)(considering *sua sponte* certifying an interlocutory appeal, for among other reasons, "[t]o avoid needless motion practice").

"Section 1292(b) permits [the Second Circuit] to exercise appellate jurisdiction over certain appeals from non-final orders when the district court advises, and the court of appeals

17

agrees, that the district court's decision involves 'a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal . . . may materially advance the ultimate termination of the litigation.'" Acumen Re Mgmt. Corp. v. Gen. Sec. Nat. Ins. Co., 769 F.3d 135, 143 (2d Cir. 2014)(quoting 28 U.S.C. § 1292(b)).

As an initial matter, it is unclear whether CCL is "aggrieved" by this Decision and Order for purposes of § 1292(b). This is because, as noted above, the Court is granting CCL's motion to dismiss the complaint. However, the Court is doing so without prejudice to filing a third amended complaint. See Fouche v. St. Charles Hosp., No. 14-CV-02492 (ADS)(ARL), 2014 WL 4413782, at *6 (E.D.N.Y. Sept. 8, 2014)(dismissing complaint with leave to replead).

Regardless, the Court need not determine whether CCL is "aggrieved" by this Decision and Order for purposes of § 1292(b) because the Court would decline to certify an interlocutory appeal in any event.

"The Second Circuit 'urges the district courts to exercise great care in making a § 1292(b) certification.'" Childers v. N.Y. and Presbyterian Hosp., ——F. Supp. 3d ——, No. 13–CV–5414 (LGS), 2014 WL 2815676, at *21 (S.D.N.Y. June 23, 2014)(quoting Westwood Pharm., Inc. v. Nat'l Fuel Gas Dist. Corp., 964 F.2d 85, 89 (2d Cir. 1992))(alteration omitted). "Certification [under 28 U.S.C. § 1292(b)] requires 'exceptional circumstances justifying a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" Gramercy Advisors, LLC v. Coe, No. 13–CV–9069 (VEC), 2014 WL 5847442, at *4 (S.D.N.Y. Nov. 12, 2014)(quoting Transp. Workers Union of Am., Local 100, AFL–CIO v. New York City Transit Auth., 505 F.3d 226, 229 (2d Cir. 2007)); see also Cotterell, 2014 WL 6886079, at *28.

While "[t]he certification decision is entirely a matter of discretion for the district court." In re Roman Catholic Diocese of Albany, N.Y., Inc., 745 F.3d 30, 36 (2d Cir. 2014)(per curiam), a court "must determine whether all three of the statutory requirements are satisfied: (1) the order concerns a controlling question of law; (2) there is substantial ground for difference of opinion; and (3) an immediate appeal may materially advance the ultimate termination of the litigation." In re Air Crash at Georgetown, Guyana on July 30, 2011, No. 12-CV-4891 (ARR) (JMA), 2014 WL 3746463, at *13 (E.D.N.Y. May 21, 2014)(emphasis added).  In other words, "[e]ven where all three criteria are satisfied, 'district courts have unfettered discretion to deny certification if other factors counsel against it.'" Id. (quoting Transp. Workers Union of Am., Local 100, AFL–CIO v. N.Y.C. Transit Auth., 358 F. Supp. 2d 347, 351 (S.D.N.Y. 2005))(internal quotation marks omitted).

In this case, the first prong is satisfied because holding that the TCPA does not provide for vicarious liability, an opposite conclusion reached to that in this Decision and Order, would result in dismissal of the Plaintiff's claim against CCL.   The Court notes that for a question of law to be "controlling" under 1292(b), it "need not affect a wide range of pending cases" as long as it is controlling in the instant litigation. Klinghoffer v. S.N.C. Achille Lauro Ed Altri–Gestione Motonave Achille Lauro in Amministrazione Straordinaria, 921 F.2d 21, 24 (2d Cir. 1990); In re Lehman Bros. Holdings Inc., No. 13–CV–2211 (RJS), 2014 WL 3408574, at *1 (S.D.N.Y. June 30, 2014)("In determining whether a controlling question of law exists, the district court should consider whether: reversal of the district court's opinion could result in dismissal of the action; reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action[;] or [ ] the certified issue has precedential value for a large number of cases.")(emphasis added and citations omitted).

19

However, it is not clear whether the third prong is satisfied, that is, an interlocutory appeal under 1292(b) "would materially advance the ultimate termination of the litigation," because Adsource would remain a defendant irrespective of the Second Circuit ruling on the vicarious liability issue.

Regardless, the Court need not make this finding because the stringent standards for the second prong are not satisfied in this case, as there is not a "substantial ground for a difference of opinion" regarding the underlying legal issue. The Second Circuit has previously suggested that the second prong may be satisfied where "the issues are difficult and of first impression." Klinghoffer, 921 F.2d at 24. However, at other times, the Second Circuit has cautioned that "the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." In re Flor, 79 F.3d 281, 284 (2d Cir. 1996).

Attempting to reconcile this language, one district court recently concluded that "the 'difficult and of first impression' language refers to situations in which Second Circuit input could help resolve disagreements among other Courts of Appeals." Garber v. Office of the Com'r of Baseball, No. 12 CIV. 3704 (SAS), 2014 WL 4716068, at *2 (S.D.N.Y. Sept. 22, 2014). The Court agrees with this aspect of Garber. Otherwise, "interlocutory appeals would be the norm, not the exception." Id.

Indeed, "[c]ertification for interlocutory appeal is not intended as a vehicle to provide early review of difficult rulings in hard cases." In re Air Crash at Georgetown, Guyana on July 30, 2011, 2014 WL 3746463, at *14 (citation and quotation marks omitted). Nor was it intended "to substitute an appellate court's judgment for that of the trial court." Koehler v. Bank of Bermuda Ltd., 101 F.3d 863, 866 (2d Cir. 1996).

20

Rather, the district judge must "analyze the strength of the arguments in opposition to the challenged ruling" in order to determine "whether the issue for appeal is truly one on which there is a substantial ground for dispute." In re Flor, 79 F.3d at 284 (internal quotation marks omitted). In order for a court to find a substantial ground for dispute, "there must be substantial doubt that the district court's order was correct." SPL Shipping Ltd. v. Gujarat Cheminex Ltd., No. 06–CV–15375 (KMK), 2007 WL 1119753, at *2 (S.D.N.Y. Apr. 12, 2007)(internal quotation marks omitted); see Gramercy Advisors, LLC, 2014 WL 5847442, at *4 ("The requirement that a certified order contain substantial ground for difference of opinion cannot be met simply because one party is dissatisfied with the Court's ruling, any more than it can be defeated simply because the Court believes itself to be correct.").

Here, the question of whether the TCPA provides for vicarious liability would be a question of first impression before the Second Circuit. Mais, decided by a district court outside this Circuit, is the only authority uncovered by the Court reaching the opposite conclusion to the ruling rendered in this case. The courts, including two district courts in this circuit, have unanimously ruled differently on this issue than Mais, sometimes expressly declining to follow it. Bank, No. 12–CV–584, at 22–23; Hartley-Culp, 2014 WL 5088230, at *2; Smith, 30 F. Supp. 3d at 772. Further, in Gomez, the Ninth Circuit Court of Appeals, the only Circuit Court to address this issue to date, albeit without referencing the non-binding decision in Mais, found that vicarious liability may attach under the TCPA. Gomez, 2014 WL 4654478, at *5. Thus, it is clear that the relevant ruling in Mais is contrary to most of the cases.

The Court does not envision any new arguments sufficient to demonstrate a substantial ground for dispute or to cast substantial doubt on whether this court's ruling on the issue of vicarious liability under the TCPA is correct. Ralph Oldsmobile Inc. v. G.M. Corp., No. 99 Civ.

4567(AGS), 2001 WL 55729, at *4 (S.D.N.Y. Jan. 23, 2001)(party did not establish substantial ground for difference of opinion where it "offer[ed] only cases that the Court has already deemed distinguishable and unpersuasive").

Therefore, the Court is of the view that this case does not present "exceptional circumstances" that justify interlocutory review.  Notwithstanding that the issue of vicarious liability under the TCPA would be one of first impression before the Second Circuit, the Court identifies no compelling reason to depart from the usual practice of awaiting entry of a final judgment before affording the opportunity for appellate review. See In re Air Crash at Georgetown, Guyana on July 30, 2011, 2014 WL 3746463, at *17.  Accordingly, even if CCL was "aggrieved" by this Decision and Order, the Court declines to certify that part of this Order rejecting CCL's arguments regarding vicarious liability for an interlocutory appeal under Section 1292(b).

### III. CONCLUSION

For the foregoing reasons, the Court treats CCL's motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the original complaint as against it as directed to the second amended complaint.  The Court grants that motion and the second amended complaint is dismissed as against CCL without prejudice to replead agency liability under the TCPA.

If, within 14 days of the date of this order, the Plaintiff fails to do so, the Clerk of the Court is directed to terminate CCL as a defendant.  Finally, the Court *sua sponte* has considered whether to certify certain portions of this Decision and Order for an interlocutory appeal to CCL under 28 U.S.C. § 1292(b) and, even if it had such authority on this procedural posture, declines to do so.

The Clerk of the Court is respectfully directed to terminate docket entries 18, 19, and 20.

**SO ORDERED.**

Dated: Central Islip, New York
February 17, 2015

_Arthur D. Spatt_
ARTHUR D. SPATT
United States District Judge